Thank you. Good morning, everyone. Judge Vanasky, can you hear and see us? I can see and hear you very well. I hope you can see me as well, too. We can, and I guess the most important thing is that you can hear and see the lawyers when they argue. So, if there's any problem with that, please let us know. We're here on the matter of Carl Lewis v. Kim Guadagno, Secretary of State. Mr. Tambusi, good morning. Good morning, Your Honors. May it please the Court. Judge Sareka, I would like to request five minutes rebuttal time. Fine. Can I ask you a question? Has there been a finding of fact as to when Mr. Lewis became a resident in New Jersey? Judge, the record is clear that, and Judge Hillman notes this, that Carl Lewis purchased his first house in New Jersey. On November 16th, 07. No, no. 2005. Well, that was the house. He had one for himself and one for his mother, but it doesn't look like he lived in that house. To the contrary, Judge, the testimony before the Administrative Law Judge was that he did live in that house. Off and on, but primarily lived in California? That's not in the record, sir. The record is that Carl Lewis lived in New Jersey since 2005. Okay, let's put Laurel aside for the moment. He bought his house in Medford, what, in November 16th, 07? Yes, sir. He actually purchased the house prior to that in August. The closing was in November of 07. But the first purchase, the initial purchase, was in 2005. And the record is clear that Mr. Lewis started moving all of his property, his cars, his belongings to New Jersey beginning in 2005. This is in the record, and this is a fact that's been ignored and overlooked by a number of people. Well, you raise a very important point, because in footnote 14 of his opinion, Judge Hillman said that it would be improper for him to address again the findings that were made or were not made by the Secretary of State, affirmed by the Appellate Division, and then with review denied by the New Jersey Supreme Court. And in your reply brief, you appear to wish to re-argue those matters. So if you could just spend a moment on that as to whether these matters were properly before Judge Hillman and properly before us. Yes, Your Honor. We go back to the administrative law hearing. Mr. Lewis testified that he first purchased the house in 2005, began doing everything to manifest his intent to become a resident again of New Jersey after having lived there for 13 or so years of his youth, I'm sorry, 16 years of his youth, to manifest his intent to become a resident of New Jersey again in 2005. That was in the record before the administrative law judge. That was clear. For whatever reason, the Secretary of State ignored or misread the record when she formed her opinion. The Appellate Division said that it was in the record, even though scant attention was paid to it. Now, this Court remanded this matter back to Judge Hillman for an as-applied challenge, which is extremely fact-sensitive. That fact, having been in the record since the inception of this matter, needs to and should be considered by this Court in determining whether or not the constitutional provision of the New Jersey Constitution, as applied to Carl Lewis, violates his rights. We're not asking the Court to assume something or consider something that was not in the record from the outset. It was in the record from the outset. And the fact that the as-applied challenge requires a fact-sensitive analysis, in particular of all the actions of Carl Lewis, particularly those dating back to 2005, makes it clear that Carl Lewis has lived here, has manifested his intent to be a citizen of New Jersey since at least 2005. How do you explain the fact that he voted in California in 08 and 09 and paid income taxes at least in 08 and possibly 09? Like King v. Lopez, those facts are not dispositive, and clearly they are not the sole facts to be considered in determining whether or not Carl Lewis satisfies the requirements of being in New Jersey for the requisite period of time. But are we not bound by the determination made by the appellate division that he did not satisfy the four-year residency requirement or does not satisfy it as of the election date in 2011? How do we get around the finding? Judge Maski, I think we distinguish that because the standard of review of the appellate division was an extremely deferential standard to the Secretary of State's findings there on the limited record presented. If you're going to have an as-applied challenge, considering all the facts, it is necessary to consider all the facts as they apply to Carl Lewis. Otherwise, an as-applied challenge would be meaningless. But doesn't that have the effect of the federal court looking over the shoulder of the state court saying you were wrong and we're going to come out to a different conclusion? There's an entirely different standard, Judge Sareka. When we're looking at what the appellate division did and the record that they reviewed, it was on an extremely deferential standard. Yeah, but we do that all the time. We review agency decisions or Board of Immigration Appeals decisions, for example, that have deferential standards of review from the ALJ. But no one, no court but this court and the district court below has reviewed the constitutional issue. Even though that constitutional issue was raised at every step of the proceedings in the state court, the state court deferred on the constitutional issue. The state court deferred to this court on the constitutional issue. The Supreme Court of New Jersey deferred. It was like ping-pong. I mean, I think the district court said as to the as-applied provision, it was deferring to the state court, and it looks like the state court didn't really deal with it. It did not, Judge Sareka. So we sent it back in April for the federal court to deal with it, pending with the option to allow the state court to do something on it. The state court punted, so the federal court went back and decided. Yes, after a period of a couple months, the state court ultimately decided, and respectfully, the state, the district court, I'm sorry, the district court ultimately decided. The district court's decision is nothing more than a re-analysis, if you will, of the facial challenge without due regard, respectfully to the district court, of the facts on an as-applied challenge. If we read the district court's opinion and take it to its logical conclusion, there can never be an as-applied challenge under these circumstances because there is no factual analysis on it as applied to Carl Lewis. If we look at what Carl Lewis... One can make a pretty good argument that the district court decision really was a facial analysis throughout. Agreed, Your Honor. And that's what's so critical here because there's never been an as-applied challenge accurately considered. And what, I'm trying to figure out what the district court should have done that it did not do in its opinion. Well, respectfully, I think that the analysis is lacking where it applies the facts, the actual facts to Carl Lewis, number one. And number two, was there a determination that there is anything more than mere words to support the state's reason for banning Carl Lewis from the ballot? There is no factual or evidential basis in this record that anyone can credibly say that Carl Lewis is not known to the voters and that Carl Lewis does not know the issues facing the district. So is that the test in an as-applied challenge? Wouldn't that then have the federal courts second-guessing the administrative and state appellate scheme for purposes of determining residency? Every time you said the residency requirement would no longer mean anything as long as you could show you know the issues and the voters know you? Well, those are the articulated reasons that the state proffers. Therefore, we would expect that there would be some foundational basis for those articulated reasons. It's not going to create the slippery slope in a parade of horribles that the state and the intervener suggest. This court, as do trial courts everywhere, do factual analyses, do a fact-by-fact consideration. Carl Lewis is unique. Put aside his athletic accomplishments, put aside his fame. Carl Lewis has actually paid back to the community on a volunteer basis by his activities since at least 2007. This is not somebody whose record is sparse. I can tell you Blaine Neal has a World Series ring. He lives in South Jersey. Dwight Hicks grew up in South Jersey and has two Super Bowl rings. But they couldn't put together the factual basis that Carl Lewis puts together and puts before the court. Judge Hillman did note that there's a painstaking analysis and presentation of facts that were presented, but he didn't analyze them in the context of the state's articulated reasons. Back in 1972, Justice Marshall said in the Voting Rights Act case, the Right to Vote Act case in Dunn, that it would be hard, people would be hard-pressed in 1972 to say the voters needed a year or three months to learn about the issues. Here Carl Lewis has been in the community since 2005. He's had his feet on the ground. He's participated in the community and he meets, he meets the challenge that the state set forth. Part of the problem that you have is that while there are summary affirmances of three judge court decisions in both Sununu and Cimenti, they polled seven year residency requirements based on a New Hampshire Constitution and then later on in a, albeit a plurality case in the fashion, there is a statement in there that essentially condones both Sununu and Cimenti as being good law. The difference between Sununu and Carl Lewis is that Sununu was not residing in New Hampshire prior to the seven years. Carl Lewis was residing in New Jersey since 2005, which is in excess of the four years. In this district... So you're saying that those were facial challenges? They were facial challenges based on a different factual predicate. Additionally, Judge Ambrose, in this district we're guided by Welford. Welford is the standard that this circuit has adopted and this is the standard that we are guided by. We are guided by Robertson. Those are the precedents that this court set. There's no internal operating procedures in New Jersey that I could find, and maybe you could let me know if there are, that says that district courts, judges try to follow what other district court judges do unless there's a good reason not to do it. Is there anything like that? In other words, you've got Calloway and you've got Robertson going one way. Robertson is pretty close to your set of facts in the decision by Judge Debevoise. Is there any type of, anything akin to internal operating procedures for the District of New Jersey? Not that I'm aware of, Judge Ambrose. Okay. I couldn't find anything either. Judge Lewis... Is the problem... I'm sorry. Is the problem with the constitutional provision, the word resident, what constitutes a resident? Is that where the problem lies here? Is it enough simply to have a residence in the state, or do you need to have domicile? Judge, the Constitution says resident and citizen of the state of New Jersey, and how the state interprets that is that you're requiring it to be domicile. Clearly Carl Lewis established residency in 2001. But in order to vote in California, don't you have to be domiciled in California? That's what the law says in California. That's correct, Judge Ambrose. So, I mean, that's the biggest issue he has, it seems like. Judge Ambrose, if Carl Lewis didn't vote in California, we wouldn't be here. I feel very comfortable after practicing in this area of law for the amount of time that I've practiced that I have not seen any case that has turned to less than this case, and it's on that vote in California. I mean, if he hadn't voted at all in California, you're right, because you can be a citizen of the state without voting. Correct. And you can be a citizen of more than one state. Can you? That's true. But we also have to look at King v. Lopez. I know you can be a citizen of more than one country, but can you be a citizen of more than one state? I believe that you can. You can certainly be a resident of more than one state. I'm not so certain that you couldn't be a citizen of more than one state, because that seems to be what King v. Lopez says. In that case, Ms. Lopez actually paid taxes in Florida, voted in Florida, had a tax exemption in Florida, and she still was deemed to be qualified in New Jersey. So – I think the IRS wants you to be a citizen of one state, though. That may be the case. I'm not – I don't pretend to be a tax lawyer, Judge Sareka. But the fact of the matter is, is that we're 56 days out from the election. We are pressed up against the deadlines. The voters of the 8th District know Carl Lewis. Carl Lewis knows the voters of the 8th District. Those were the articulated reasons. Tied to the issue and can't – the thing that can't be lost in the issue here is the paramount right of the voters of the 8th District to have a meaningful choice. At this point in time, we're at the end of the race, so to speak, and we need to make sure to be consistent with New Jersey Democrat Committee versus Sampson, to be consistent with Gangemi, to be consistent with the court's – this court's decision in Welford, that the voters – that the voters of the 8th District have a meaningful choice. If Carl Lewis is not on the ballot now, given the fact that there's no harm, no evidence of any harm to either of the state's articulated reasons, having abandoned apparently the corporate bagger argument, then the only way to preserve and present a meaningful choice to the voters of the 8th District is to leave Carl Lewis on the ballot. Good. We'll have you back on rebuttal. Thank you very much, Mr. Tambusi. Ms. Kelly, are you going first? Yes, Your Honor. Good morning, Your Honors. It's a pleasure to be back here. On behalf of the state, the Secretary of State and the Attorney General, we would implore this Court to uphold the decision of the District Court. Are you a textualist? Excuse me, Your Honor? Are you a textualist? Do you believe that we should look at the text first and, if possible, give primary emphasis to the text of a provision? Yes, Your Honor. We think that we have in the state of New Jersey a constitutional and a lawful 167-year-old provision, and our line of demarcation is four years. You have to be a resident for four years in order to run for the office of State Senate. Let's look at the text. No person shall be a member of the Senate who shall not have attained the age of 30 years and have been a citizen and resident of the state for four years and of the district for which he shall be elected one year. No person shall be a member of the Senate. When do you become a member of the Senate if you're elected on November 8th of this year? Well, you become a member of the Senate when you're literally sworn into office. And that would be the second Tuesday in January, which will be January 10th, I think, of 2012. So how is it that we're looking at November 16, when you buy a house, 07, has there been a finding of fact that as of January 10, 2008, Mr. Lewis was not resident of New Jersey or was a resident? No, that the critical time is as of the time of the election is how we've interpreted the provision. But at the time of the election, how can that be if you're a textualist? Because for example, you had Vice President Biden was elected to the United States Senate at age 29. You can't be a senator until you're 30. And by the time he was sworn in, he was 30. Your Honor, on this point, our state court has made a determination on this matter of state law. And on this determination, the appellate division affirmed that November 8th was the critical point of time as we've interpreted our state constitution and it has been enforced without challenge up until now. They've certainly made that assumption, but that doesn't what the text says, does it? It's how it's been interpreted by the state court, and this is a matter of state constitutional provision. The federal courts have recognized that the state, it's a matter for the state law. State courts decide that it has been decided as a fully litigated issue on this matter. So if you're elected on November 8th, you become a member of the Senate on November 8th? No, you do not, Your Honor. But you have to be so qualified in order to run for office. Otherwise, you could have a situation where the constitutional provision is not at all of any weight, of any effect, if you're not so qualified at the time that you are running in that election. That is how we've interpreted this constitutional provision. So I believe that this federal court is bound by the, oh, I'm sorry. So excuse me for that. That's all right. We believe, as we've argued in our briefs, that this issue of the interpretation of the state constitution as decided by our, the highest court in our state, this court is bound by, and that to be a resident, to run for office, you must be domiciled. The state court has not decided that issue, has it? The state supreme court declined to review the appellate division decision in which the of November 8th, 2007, and we believe that that's the critical point in time for purposes of this matter. Pat, let's just go through the rest of it here. He's been a citizen and resident of this 8th district for greater than one year, is that correct? Yes, Your Honor. The district residency is not an issue, as we've argued before in the Robinson v. Bartels case. As the federal court ruled, that provision of our constitution was unconstitutional, and it has not been enforced since that time. And if he's not been a citizen and resident of the state, assuming for the moment he has not been for four years prior to whatever the magic date is, he's very close to it within a matter of either months or days, at worst. The Secretary of State did so indicate in her decision, which was upheld by the appellate courts. But the fact of the matter is that it's four years is four years. And we need to keep a consistent enforcement. If you do an as-applied challenge, you're looking to two principal things. Does this person know what the issues are in the state, and do the people who are the do they know about the particular candidate? It's pretty hard to say in this case they don't know about the candidate, so then the question becomes, does this particular candidate know about the issues of the state? Quite honestly, Your Honor, we think that the district court framed the proper issue. The proper issue is, as applied to Mr. Lewis, have any of his constitutional rights been violated? And the district court, in a very thorough, detailed decision, ruled that he did not. Let's start off with, what is the test that the district court used here? The test that the court used? Correct. The court relied upon the rational basis test. How can you possibly do that when the court said in the spring of this year that it's a strict scrutiny test, when this court in Welford has said it's a strict scrutiny test? I mean, just off the bat, that's wrong. Well, Your Honor, I'm not sure I would concede that at this point. Yes, I do understand that the district court applied for five years. How can the district judge overrule the Welford decision of this court that says you apply strict scrutiny? Well, because I believe that the facts are not similar. In this case, we're dealing with the state constitutional provision for office of state senate. In the prior case, we were dealing with the local office. It's a residency requirement, a durational residency requirement with respect to being mayor of Wilmington. And the court, the district judge, then Judge Stapleton, then District Judge Stapleton, then said that that was unconstitutional and you apply strict scrutiny. And the Third Circuit specifically said you apply strict scrutiny. You can't overrule that. Well, Your Honor, I also think that Judge Hillman covered that in his opinion in a footnote indicating that even if you were to apply a higher standard of review, that he doesn't he still does not, you know, he still does not win on the status applied challenge. He still hasn't established that he has so violated his constitutional provision. Where does he say that in the opinion? I think it's in his footnote, in a footnote to the opinion, and I apologize, I do not have the exact citation with the page number at this point. And I also would say in deference. I will concede that strict scrutiny here doesn't mean what we normally understand as strict scrutiny. Normally strict scrutiny means you lose, but here it's a different case. There's no doubt about it. But then what it requires is that the state show compelling interest as to why this particular individual doesn't, should not have applied to him the some type of rule of reason. This is not a facial challenge. This is an as-applied challenge. This is the rule of law. You're absolutely right, Your Honor. And in our state, you have to be a four-year resident, and our state courts made the determination residence equals domicile, and Mr. Lewis did not meet that four-year requirement. That is really the bottom line here. And we need, we as a state have the, it should have the right to have consistent certain application. The problem with trying to carve an exception here is, as Mr. Tembusi did indicate, and it is a legitimate state concern of a sliding slope. And then, you know, how do you measure, you know, how do you measure voter knowledge? What do we, are we supposed to issue out surveys? What do we do about candidates? Do we give them the civics test to make sure that our state's interests are really being satisfied with this one particular individual? I mean, where can you cite to any case, or where has Mr. Tembusi cited a case where in fact the state was bound to go those extra lengths? It is long-standing principles that have been acknowledged in a number of federal court decisions that the state's interests are more than compelling here. As the Supreme Court summarily affirmed in the Sonuna and the Tremento case. And there has been nothing exceptional here to Mr. Lewis as far as the state's concerned and as far as the district court was concerned that would allow for this to be an exception. You've had a primary here in which you've had 2,400 people vote for Mr. Lewis. You've also got, according to the cases, a right of, I guess, interstate travel affected. Your Honor, yes. The right to travel issue, from our reading of the cases, it's not a win for Mr. Lewis. I mean, if you read the Sonuna case, Tremento case, and Anthony's case, it's hypothetical. But if you look at your position, the brief that you filed in the Roberts and Bartles case, in that case 10 years ago, you say, and this is a quote from Judge Debevoise, the state argues, the state of New Jersey, that plaintiffs assert that only their right to interstate, not interstate travel, has been burdened. And the distinction is an important one because restriction which encroaches upon one's right to travel between the states is analyzed under a stricter compelling interest test. Yes, Your Honor, that was a test. So isn't the test today a compelling interest, despite what you say about rational basis? I think if you would do what Judge Hillman, I think, properly did, is to really go back and start with Bullock and moving forward, it is very difficult to justify compelling interest. What is the test that we use? We believe that Judge Hillman was properly ruled that the standard of review here is a rational basis. Because? Because there's no fundamental right to interstate. Because he was wrong in the spring when he put compelling interest? Because we were wrong in Welford and you can overrule Welford? I can't get into the mind of Judge Hillman. I mean, I can only say that back in the spring, it was a matter where there was very time compressed. We were dealing with maybe close to a little less than a month before the primary election was to be conducted. And I can appreciate where the court did not have the benefit of sitting back and doing a more elaborate review, as he now has had the opportunity to do. And again, there's no fundamental right to candidacy. You really can't legitimately argue that the right of the voters of the interstate is seriously impaired by the enforcement of this constitutional provision. Well, they're not going to be able to vote for the person in the November election. So if that isn't a serious impairment, what is? I'm sorry, Your Honor. When you talk about... I mean, the rights of the voters of this particular district. There's a particular person that they cannot vote for if you rule against the person. Yes, Your Honor. Because he's not qualified under our state law. He doesn't meet the four-year requirement. And what's interesting is that if you look at the Walker case, in the Walker case you had someone who had won the primary and who was not challenged until afterwards. And the Attorney General of Delaware had to go in and say, you know, I'm sorry, Mr. Walker, but you're not qualified. We have to pull you from the November ballot. So in that case, the primary election results were helpful. But he prevailed. Well, I think he lost his election. He lost his election. I mean, yes, he did get the stay from Justice Brennan, yeah, I agree. But ultimately, the court ruled against him and he did lose the November election. So in other words, what we're trying to say is that the primary election results are really irrelevant. We are not... But here, let's just, if the issue is, he's a member, this is the 8th Legislative District, correct? Yes, Your Honor. And if it's the 8th Legislative District, it would be this persons who can vote in the 8th Legislative District. Yes. And your Constitution requires that you be a citizen or a resident of the 8th Legislative District for one year. What does it make a difference as to whether you comply with state residency requirements in an as-applied challenge? We don't enforce the four, well, we don't enforce the one-year residency requirement anymore. It is the four-year residency requirement, statewide residency. And he does not need it. But what does it have to do with, how does that state residency requirement have anything to do with whether the citizens of the 8th Legislative District know him and he knows them? Or he knows the issues that affect that district? Because that is important. He does, a state senator does represent a district, even though he also has to vote on issues that are obviously of statewide import. So the way our system, and this is our state system in New Jersey. We have 40 state senators. We have 40 districts. Each, you know, each senator represents a district. But my question is, what does this have to do with whether he knows the issues of that district and that district's citizens know this candidate? Those are well, those are long-standing interests that a state has been permitted and allowed to enforce in terms of durational residency requirements. A durational residency requirement has been long upheld in this country. From the U.S. Supreme Court in Sununu and Tremento, he does not meet our residency requirement. And he can run in 2013, and that's the critical point, too. This is not like, perhaps, a Bullock situation where someone would be permanently barred from a candidacy because he can't afford a filing fee. He can run. He could have run for the Assembly because it's a two-year residency requirement. He could run for local office, and Judge Hillman properly recognizes that, that his rights are not so impaired that he now, you know, there's a constitutional issue that's been raised by this. So, that's the other point that we, you know, that we need to make here as well, is that it's a four-year residency requirement is constitutional. Our state courts have ruled that he needs to be a resident for four years. Sununu is more than instructive here, where the U.S. Supreme Court's merrily affirmed a seven-year residency requirement. And there's been nothing put forward here to... Does it make a difference that that was a facial rather than an as-applied challenge? I look at the Callaway case for instruction on the as-applied challenge, where the facts there were so different than here. And I will tell you that Judge Hillman did look at his individual situation. He did look at that. It's clear from his opinion. When he was ruling upon the motion, cross motions for summary judgment, he did accept, you know, all the statements that were put forth by Mr. Lewis. But he couldn't find, and I don't think any court could properly find, that there's an equal protection violation, that no constitutional rights have been impaired for either Mr. Lewis or the voters of the district. And in terms of the voters of the district for the November election, they will have... If he's ruled to be invalid, or unqualified rather, to run, there is the procedure whereby there can be a replacement candidate. And I understand that Mr. Timbusi in his brief said, well, it's such a short period of time, no next candidate could marshal enough resources to win, but in our state, when Frank Lautenberg replaced Mr. Torricelli for the U.S. Senate, he won in that less than 30 days before the election. So I don't think that that is an argument that... What is the magic date here? Is this September 15th? It's actually today. This is how the system works. By today, you have to vacate your nomination. And then the affected members of the County Committee of the 8th Legislative District for the Democratic Party can come together and meet and provide a name to the Secretary of State by September 15th, which is this Thursday. And if they go, you know, that's what happened in the DSC versus Sampson case, they went past that 51-day deadline, and that's why we had to have a court... The reason I ask is because what was filed yesterday seemed to say that the 54th day, you have to declare a vacancy, and that would be September 15th, you have to have a new candidate by the 50th day, which would be the 19th, then you have to do something by the 45th day, which is the 24th. I didn't see anything on the back of the 13th. No, the way it is, it is September 13th for the purposes of the vacancy occurring. If the Court does not have any more questions, again, we primarily rely upon the briefs that we have filed, and again, we believe that Judge Hillman had a very thorough, detailed opinion, and we would hope that the Court would... One of the things that he also didn't seem to cover in the opinion, or at least the one he did this time, was a real thorough analysis of Robertson or Callaway. Well, Robertson, I find that so distinguishable from this case, because in Robertson, it was hard to really dispute Judge Deboise's decision, because you had a moving target with the legislative district line, and then in Callaway, you had somebody who'd been living in Atlantic City for 20 years, he moved 13 blocks into the new ward. You're not dealing with the state constitutional provision, you're dealing with a local provision under Atlantic City government, so that kind of case, to me, is more in line with the Welford and the other cases where they dealt with local office. Here, we're dealing with the state constitutional provision, and it's also been put in Judge Hillman's decision, and it's been recognized in Sununu, Chimento, the Hankins, and in the Walker decision, that state constitutional provision carries much weight, and the state has the right to have it enforced, and we believe it is enforceable, and it's proper to so enforce it here in Louisiana. With respect to the standard of review, what is it that distinguishes this case from Welford, where we said it ought to be strict scrutiny review? Again, we think that the fact that we're dealing with the state constitutional provision, we're dealing with the state office, makes it distinguishable. And I think that if you look, again, Judge Hillman did recognize that if a heightened standard is required, that he still does not meet that hurdle. Thank you, Your Honors, for your time. Any other questions? Good. Thank you very much, Ms. Kelly. Mr. Sheridan? Morning. Morning. Thank you, Your Honors. Mark Sheridan on behalf of the interveners. There's been a lot of discussion about Welford and what it means in the context of this case, and I'd like to address that at the outset. Welford was in the context of a local election. Mayor Walker, another Third Circuit decision in the context of interpreting the Delaware state constitution, upheld under rational basis a three-year residency requirement for the state legislature. Which case? Walker versus Yuck, Your Honor. No, Joe Yuck, yeah, okay. I knew Joe. I would submit that in the context of this case, where we're dealing with the state constitutional provision, Walker is controlling in this context. Huh? I would suggest that Walker... How? It deals with a state constitutional issue, assembly, legislative... And who was the court that decided that Walker case? Third Circuit. And did they specifically say it would be rational basis? They did, Your Honor. And in fact, the Third Circuit in Welford, purposely in a footnote, I believe, dropped... And when was the Walker versus Yuck case decided? 72? 72, Your Honor, yes. And Welford versus Tagli was 73. 73, Your Honor, yes. With a note of distinguishing Walker and Welford, indicating that it was a different case, and that it was a local ordinance at issue, and not a legislative constitutional mandate. Welford made that notation. But in this particular case, in the spring, you've got the very judge who decided it, saying that it's strict scrutiny. It's tough to go from... I mean, there's an argument that no matter what it is, you may still prevail because, as we said, strict scrutiny here doesn't mean strict scrutiny as we normally understand it in the constitutional sense. The question then becomes, do you have a compelling state interest? And don't you argue you still would prevail even under strict scrutiny? I believe we would still prevail under strict scrutiny. But I would tell you the same thing I told you when I was here the last time, which is whatever the standard is labeled, it is not strict scrutiny in the standard sense. We understand that. If you read Sununu, if you read Gemento, there was an analysis of the facts. You wouldn't do that in the context of a facial challenge under strict scrutiny. Let me ask you back to the question that I asked Ms. Kelly at the outset. When you look at this particular statute or constitutional provision, why don't you look at it as a textualist? No person shall be a member of the Senate. I would look at it as a textualist. I would tell you that there has been a finding that he does not meet the four-year residency requirement. This court does not sit in a position to review that finding by the appellate division of the state of New Jersey as deferred by the Supreme Court. So as a textualist, if we were just no cases at all, this case isn't before us, how would you read that? I would read that as the day he was sworn in. It seems that way. It does, Your Honor. And as a result of him voting in 2009 in California, where he just declared his domicile, he is incapable of meeting that four-year residency requirement. As the Secretary of State noted on page 12 of her opinion... By the way, can you be a citizen and resident of more than one state? You cannot. You can have one, but one domicile, Your Honor. And that domicile, as evinced by his voting in California, was in California in November of 2009. As a result, he cannot meet the four-year residency requirement. Is there... Okay, I got it. Which brings us back to, if I could, the standard of review. We've talked about strict scrutiny and whether it applies. I would submit that there is no fundamental right infringed here. Your Honor talked about the right... The compelling interest that the state used to give, and one of them is now the carpet bagger. Let's take that out. And it doesn't work here. Does the candidate know the local issues, and do the voters know the candidate? Those are the compelling interests here. And when you have an as-applied challenge, you're looking to the individual rather than just to across the board in a facial challenge, which is what we dealt with in the spring. It's hard to say that this candidate doesn't know the local issues affecting the 8th Legislative District, and it's kind of hard to say that the voters don't know who he is because of the fact that he's got a lot of publicity over the years. Your Honor, I would submit that under an as-applied challenge, the question is not whether there are sufficient facts regarding Mr. Lewis that he is somewhat unique. It's whether those facts result in him being treated differently than someone similarly situated. And in this case, he is not being treated differently than anyone who is similarly situated. Now, what happened in the Lautenberg matter? How did they get around the residents? He obviously was a resident. How did they get around the time that it had passed for the ballots, et cetera, et cetera? Administrative feasibility, Your Honor. The conclusion was that 51 days didn't mean 51 days. It meant when it was administratively feasible. And in that context, it was 29 days. In Callaway, there was an interesting point made by then-Judge Orlovsky, which is that the durational residency requirement seems to prove too much by precluding otherwise qualified – well, precluding well-qualified candidates from running, and too little by allowing those who merely have resided in the state for four years but been a vegetable to nonetheless be qualified. Isn't that the case here, too? Your Honor, that judgment is left to the voters of the state of New Jersey. And for 167 years, they have required that candidates for the state senate live in the state for four years. Callaway, Robertson, those cases are also distinguishable on the grounds that when we're talking about local lines, local lines move. Boards are redrawn. Legislative districts are redrawn. State lines don't change very often. The only time that I can recall that New Jersey's borders have changed, I believe, was a negotiated settlement with the state of New York over who owned the Statue of Liberty. But other than that, state lines do not move. But what about – what about Judge Orlovsky's point that it proves too much and too little? His point was that you could have somebody who is practically comatose who qualifies and yet have the most invigorated, active, knowledgeable person not qualified. Your Honor, again, that is best left to the citizens of the state of New Jersey. They have exercised their right. They have stated their principles. They have repeatedly stated their commitment to those principles. It is not for the judiciary to impose – You mean the federal judiciary? Either the federal or the state judiciary to impose its will to modify or rewrite the New Jersey state constitution because, in a particular case, they believe it inapt. I believe that if they wish to do that, we should go back to the voters and revise the constitution. The Lautenberg interpretation was a statutory interpretation. It was, Your Honor. It was an interpretation of 1913-20. I'll go back to the standard review issue. I'm shown that Walker v. Yuck was a three-judge district court decision, not a court of appeals ruling. Do you have a citation for us to the court of appeals? Bear with me one second, Your Honor. It's on page 12 of my brief. I remember when that case came up. I don't remember it being heard by the Third Circuit, but maybe I'm wrong. You're correct, Judge Maski. I apologize. It was a three-judge panel in 1972, but it was specifically distinguished by the Third Circuit in Welford as being a constitutional issue as opposed to a statutory issue. But that's not a holding in Welford. Welford was a very short decision that basically said that you're going to apply strict scrutiny. I mean, basically, they took Judge Stapleton's opinion and put a stamp on it. They did, Your Honor. Which is usually a good thing to do on this court anyway. I would agree, Your Honor. If you have nothing further, I'd be happy to yield. Anything else? No. Good. Thank you very much, Mr. Sheridan. Thank you, Your Honor. Mr. Tambusi. Your Honors, thank you. I'll be very brief. Mr. Sheridan said a couple times that it's a judgment left to the voters in response to Judge Ambrose's questions with regard to Judge Orlowski's comments at Callaway. That's precisely what we are talking about. And when we talked about Lautenberg and how he got on the ballot, the Supreme Court there said that the laws that regard our elections should be interpreted to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly, to allow the voters a choice on election day. That's what we're seeking to do here. We're not trying to evade a technicality. We're trying to put forth, the party is trying to put forth the candidate, a meaningful candidate to give the voters a meaningful choice. The candidate who has lived in New Jersey since 2005, the candidate whose property, the 2007 property, which is Exhibit 58 or 58 of the Lewis certification, shows that he purchased this property before he will be, at least more than 40 years before he would be sworn in as a senator should the voters elect him to be that. The vote alone in California is not dispositive. What is dispositive here is whether Carl Lewis knows the voters of the 8th District, whether the 8th District voters know Carl Lewis. He does. That has been satisfied. There's no evidence to the contrary. In fact, we need to keep looking back to the New Jersey Democrat Committee party versus Sampson and look at that language that allows the candidates to be on the ballot, to allow the voters to have the meaningful choice, to allow the parties, parties to put the candidates on the ballot. I don't think that we can lose sight of the fact where this challenge initially came from. There was not a Democrat that challenged this candidacy of Carl Lewis when he filed. The interveners were Republicans who filed to challenge Carl Lewis's candidacy, people from the opposite party. That's contrary to what is said by our Supreme Court, New Jersey Democrat Committee versus Sampson. We don't want to treat Carl Lewis any differently than any other person that lived in the state. Carl Lewis has lived in the state since 2005, clearly since 2007. He will be treated differently from people who have lived in New Jersey from that time based on what would be a technicality. That's what is sought to be done here in order to justify, justify removing someone who knows the district, knows the issues in the district, the voters know, and for whom 2,418 people cast a ballot in an uncontested primary election. More votes than even the running mates that he ran with. Those people would be disenfranchised should Carl Lewis be denied this opportunity 56 days before the election. Let's be real clear about what New Jersey law says about replacing a candidate. There's no foregone conclusion that a candidate will be replaced at this late date. 56 days before the election, if the office is vacated today or deemed vacant today, the successor has to be selected by September 15th. New Jersey statute 19,13-20 says that when a vacancy is declared, when a vacancy is declared, the county committee chairman of the three counties here have to convene a meeting within seven days on not less than 24 hours notice. Simply by complying with the not less than 24 hours notice provision of the statute, we're beyond the September 15th deadline. Is there a provision? Do I remember from our argument last spring that there's a provision to go into court, into state court, even after the deadline for getting on, or am I incorrect on that? So I just reckon there's no provision. That's the only option. In order to get this vacancy filled, should a vacancy be declared. After September 15th. After September 15th, you would have to go into court and seek the opportunity to replace, to fill the vacancy. Something that would be left to the discretion of the court. And frankly, at that point in time, we're running into 50-some days before the election, by the time there's a decision. You're taking someone who has campaigned throughout the season, someone who has garnered 2,418 votes, someone who has... In an election in the 8th Legislative District, how many votes normally are there cast in a full? Well, we don't know yet. What was in the last election? This is a redistricted year. So we don't know. In fact, I believe there's at least seven new towns in the district. So we don't know exactly how many votes were cast. Each district in New Jersey was reconstituted at 200,000 registered voters. But when we look at an uncontested election in an off-election year, a non-presidential year, the votes are significant that Mr. Lewis garnered. This is with Mr. Lewis running in a primary with the cloud over his head, put there by the challenge. He still had people come out and exercise their franchise and cast their vote. Did you ever make the argument that the time that you should look to is January as opposed to the prior November? Judge, before the Administrative Law Judge, we made all those arguments, including that argument. Well, the Administrative Law Judge bought it. But the Administrative Law Judge was looking to November and found that he was qualified and never really seemed to address whether January. I mean, the only thing, is that correct? That is correct, Judge. But we don't have an opportunity to argue before the Secretary of State. She simply took the Administrative Law Judge hearing transcript and reviewed it. There's no opportunity to argue beyond that. And we appeared before an Administrative Law Judge on two days' notice to present this matter. So, frankly, there was no meaningful opportunity to complete the record until we got to the District Court. And then when we put the District Court record together, it was noted by the District Court the amount of detailed facts that were there. We raised all of the issues before the Administrative Law Judge. We put all the meat on the bone. Did you ever make the argument that a member of the Senate should mean January as opposed to November when the election takes place? I didn't see where the argument was made. That issue did not come up in the context of the hearings. But we never had the opportunity to put that before the Administrative Law Judge because we didn't feel that we needed to, because we had a closing on a condo in Medford in 2005. And we also had a closing on another condo in 2007. But if the date was January in the closing in 2007, you have a laydown hand if it's November 16, 2007. But in reality, buying a house and then living in the house, and we're not quite sure when he lived in it. All we have is a gas bill from February that shows that clearly he had full usage from January 22 and a significant amount of usage before that time. But conceivably, he may have been living there or conceivably, he might have been using the gas just to make sure that the pipes didn't freeze. Well, the testimony before the Administrative Law Judge was that he was living it. In January? Yes. Early January? Yeah, from the time he purchased it. Judge, again, we're at the finish line here. We're getting close to the finish line. And we have a right for the voters in the 8th District to exercise their vote and have a meaningful choice. That's what this is about, a meaningful choice. And for those reasons, we believe that the District Court ruling should be overturned and this Court should enter an order allowing Carl Lewis to run on the ballot. In the event that that is not the case, there will be irreparable harm to Carl Lewis. By the way, on the fact, are you sure he was living in the house from... I didn't see anything in the affidavits that said he was living in the house from November 16, 2007. I think what it said was he was in the process of moving furniture and stuff from California and that arrived in January. Judge, I believe the testimony before the Administrative Law Judge was that he began living in the house during that period of time. And that transcript was made part of the record. If you could just identify that to us, just send us to the clerk a note to that effect. I will, Your Honor. Pointing out where that occurred before the ALJ and where it is in the record. I will. Thank you, Your Honor. Good. Thank you very much. Case was very well argued by all counsel and we understand that it's a significant matter, certainly to Mr. Lewis and also to the State of New Jersey. The Court will move with dispatch on this and take the matter under advisement. Thank you very much.